**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, and CHARLES STANLEY PAINTER,<br><br>Plaintiffs,<br><br>v.<br><br>TOM VILSACK, in his official capacity as United States Secretary of Agriculture, *et al.*,<br><br>Defendants. | Civil Action No. 1:14-cv-01753 (KBJ) |

## REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

In a memorandum opinion issued on February 9, 2015, after defendants filed their motion to dismiss in the present case, this Court held that two individual poultry consumers and an organization lacked standing to challenge defendants' New Poultry Inspection System ("NPIS") rule. *Food & Water Watch v. Vilsack*, --- F. Supp. 3d ---, 2015 WL 514389 (D.D.C. 2015) ("*FWW*").  In *FWW*, two individuals and an organization purporting to sue on behalf of itself and its members asserted that they had been harmed, *inter alia*, because the NPIS "substantially increased the risk that [the individuals] will purchase and consume adulterated, low-quality, or unwholesome poultry products" and that the organization's "members will be injured in the same manner." *Id.* at *8.  These allegations of injury are similar to those plaintiffs assert here, *see* Compl. (Dkt. No. 1) ¶¶ 15-17, 21-22, and, moreover, in filing the present case,

plaintiffs identified *FWW* as a related case "grow[ing] out of the same event or transaction." Dkt. No. 1-2.

This Court analyzed the *FWW* plaintiffs' allegations under an "increased risk of harm" theory, pursuant to which this Circuit requires that a plaintiff allege, and eventually demonstrate, that, because of the challenged conduct, there is "'both (i) a substantially increased risk of harm and (ii) a substantial probability of harm [to the plaintiff] with that increase[d risk] taken into account.'" *FWW*, 2015 WL 514389, at *9 (quoting *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 513 F.3d 234, 237 (D.C. Cir. 2008)). Applying this standard, the Court rejected the *FWW* plaintiffs' claim to standing, holding that they had not established either (1) that the NPIS *substantially* increases the risk of unwholesome or adulterated poultry entering the market or (2) that, even assuming such a risk, there is a *substantial* probability that the plaintiffs or organizational members will themselves be sickened by adulterated NPIS-inspected poultry. *FWW*, 2015 WL 514389, at *10-*13. Concluding that the *FWW* plaintiffs' alleged fear of injury was too speculative and unproven to support their claim of standing, *id.* at *13-*14, the Court dismissed that case.

In light of *FWW*, and its discussion of the law of standing in this Circuit as it relates to speculative allegations about generalized harms from the operation of the NPIS, the present case must be dismissed. Plaintiffs' March 23 opposition memorandum, which fails even to address the impact of the February 9 *FWW* decision, does not establish that there is any reason to reach a different conclusion in the present case. Indeed, even after the submission of two additional declarations, plaintiffs still do not allege that there will be a "substantially" increased risk of unsafe poultry entering the market under the NPIS. As in *FWW*, the Court here is not required to

2

accept conclusory statements and "sheer speculation about the bad things that might happen to the nation's poultry supply if sorting is placed in the hands of establishment employees." *FWW*, 2015 WL 514389, at *12. And plaintiffs here do not realistically suggest that they could develop a credible allegation of substantially increased risk, as they do not point to any additional evidence regarding the risks of the NPIS that was not considered by the Court in *FWW*.

Nor do plaintiffs allege that there is a "substantial" probability that they or their members will become ill from eating NPIS-inspected poultry, even assuming a substantially-increased risk of harm in general. Although Mr. Painter may travel to five states and the District of Columbia for work, Declaration of Charles Stanley Painter, Dkt. No. 14-2 ("Painter Decl.") ¶ 9, and AFGE alleges that it purchases poultry for events "across the nation," Declaration of J. David Cox, Sr., Dkt. No. 14-1 ("Cox Decl.") ¶ 7, there is no allegation by either party that establishes a concrete and nonspeculative proximity between themselves (or their members) and a slaughterhouse that will operate under the challenged NPIS rules. As this Court noted in *FWW*, "'it is speculative at this point as to how many plants will convert to NPIS, and the ultimate schedule for such conversion.'" *FWW*, 2015 WL 514389, at *13 (citation omitted). "Given the number of discretionary steps that would be required for an unwholesome poultry product to get from the slaughterline to [plaintiffs'] kitchen tables, [plaintiffs'] fear of injury is clearly too 'highly speculative[,]' to support their claim of standing." *Id.* (citation omitted).

Finally, the organizational plaintiff here, AFGE, claims injury on its own behalf on the basis of its allegation that guests who may become ill by eating poultry at its functions may sue AFGE. However, plaintiffs have not rebutted defendants' contention that these allegations require a chain of causation too attenuated to meet Article III's requirements for granting AFGE

3

standing in its own right.  Moreover, AFGE is a union representing federal employees.  It has not

shown how its incidental concern with its members' health, supported by the fact that it provides

some health benefits to its members, grants it standing on a representational basis to challenge

the health effects of a rule that is related to food safety in poultry processing.

For all of these reasons, the Court should reach the same conclusion that it did in *FWW*:

the plaintiffs have failed to allege a sufficiently concrete, particularized, and imminent "injury-

in-fact" to satisfy Article III's requirements.  Accordingly, the present case should be dismissed.

## ARGUMENT

### I.      PLAINTIFFS' SUPPLEMENTAL DECLARATIONS DO NOT CURE THEIR FAILURE TO ALLEGE A SUFFICIENTLY CONCRETE AND IMMINENT INJURY

As discussed in defendants' opening memorandum,[1] plaintiffs lack Article III standing to

bring the present suit because they have not alleged a sufficiently concrete, particularized, and

imminent "injury-in-fact" to themselves from the NPIS.  Defs' Dismiss Mem. (Dkt. No. 12-1),

---

[1] Plaintiffs suggest that defendants were required to file a certified copy of the index of the Administrative Record with their motion to dismiss.  *See* Pls' Opp. Mem. (Dkt. No. 14), at 2 n.1 (citing Local Civil Rule 7(n)).  The cited rule provides that in a case "involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court . . . simultaneously with the filing of a dispositive motion."  LCvR 7(n)(1).  The apparent logic of the rule, however, presupposes that the "dispositive motion" at issue implicates the contents of the administrative record.  *See* LCvR 7(n) cmt.1 ("This rule is intended to assist the Court in cases involving a voluminous record . . . by providing the Court with copies of relevant portions of the record relied upon in any dispositive motion." (emphasis added)).  Indeed, in directing counsel to file an appendix of administrative record material in addition to the certified list, the rule specifically instructs counsel not to "burden the appendix with excess material from the administrative record that does not relate to the issues raised in the motion or opposition."  LCvR 7(n)(1).  Defendants' motion to dismiss, which raises only jurisdictional and other threshold defenses, does not rely upon the contents of any documents other than the published rule and one publicly available report (which defendants provided with their motion, *see* Defs' Dismiss Mem. at 9 n.2), and therefore, defendants did not file an index of the administrative record with their motion.

15-24.  In their Complaint, plaintiffs alleged only in general terms that the inspection changes

introduced by the NPIS will "increase the risk that adulterated poultry and poultry products will

be sold to and consumed by the public."  Compl. ¶ 5.  The Complaint then alleged, with a similar

lack of quantification or concrete specifics, that the health and welfare of individual plaintiff

Charles Painter is "likely to be adversely affected by the Rule[]" because the NPIS will

"increase[] the risk that [Painter] will become ill after consuming poultry or poultry products."

*Id.* ¶ 22.  The Complaint likewise asserted the same generalized injury to AFGE's members to

establish its representational standing – that its members will become sick from eating NPIS-

inspected poultry, especially that served at AFGE functions. [2]  *Id.* ¶ 17.  The Complaint then

took this speculation a step further, asserting that AFGE would be harmed as an organization

because individuals may become sick after eating poultry at an AFGE-sponsored function and

might then sue AFGE.  *Id.* ¶ 18.

Defendants' opening memorandum explained that these unquantified allegations are too

amorphous and speculative to meet Article III's requirements.  Even under an "increased risk of

injury" standard, defendants explained that plaintiffs had not so much as alleged that there is a

substantial increase in risk from the NPIS, let alone attempted to quantify the risk or its increase.

Defs.' Dismiss Mem. 22-23.  In addition, plaintiffs failed to allege that this purported increase in

risk is causally related to Mr. Painter or another AFGE employee or member, such that such

individual would be exposed to NPIS-inspected poultry in the future, and thus that there is a

significant probability that plaintiffs will suffer injury from that exposure (assuming, contrary to

---

[2] For AFGE to have standing to sue in a representational capacity, it must demonstrate, *inter alia*, that "its members would otherwise have standing to sue in their own right."  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

evidence discussed in *FWW*, that it is in fact injurious).  *Id.* at 16-17.  Accordingly, plaintiffs have failed to meet the D.C. Circuit's requirements to establish standing under an increased-risk theory.

In response to Defendants' Motion to Dismiss, Mr. Painter and AFGE's National President, J. David Cox, Sr., have submitted declarations to supplement the allegations in the Complaint.  *See* Exhs. to Pls' Opp. Mem., Dkt. Nos. 14-1, 14-2.  Mr. Painter's declaration states that he purchases and consumes poultry products three to five times a week, that he purchases and consumes poultry products from a number of fast-food chains, and that he does so in a variety of locations as he travels frequently.  Painter Decl. ¶¶ 7-9.  Mr. Cox's declaration similarly asserts that AFGE "regularly" purchases poultry products for events it hosts both "at its headquarters and at organizing events held across the nation."  Cox Decl. ¶ 7.  Mr. Cox further explains that AFGE-purchased poultry products are consumed by a wide variety of individuals, including "members, prospective members, employees, and officers," and, for example, are served at functions when organizing new units of employees or newly formed locals.  *Id.* ¶¶ 7, 8.  Both declarations end with conclusory assertions about the feared effects from the NPIS.  *See id.* ¶ 9 (alleging without explanation that the NPIS "threatens the health and safety of [AFGE] members"); Painter Decl. ¶ 11 (indicating that he "strongly believe[s]" that "federal inspection of the carcass . . . is vital" to his "health and welfare").

These declarations do not cure the defects with regard to the allegations in the Complaint. Most importantly, they do not address the Complaint's failure even to allege that there will be the necessary "substantial increase" in the risk of harm from the NPIS.  Nor do the declarations otherwise provide any support or evidence to suggest that the increase in the risk of harm is

likely to be substantial.  Second, even assuming a substantial increase in risk, plaintiffs have still

not specifically alleged that there is a "substantial probability" that they will *themselves* be

injured by this increased risk.  *See FWW,* 2015 WL 514389, at *9.  Although plaintiffs' new

declarations attempt to add more detail to establish the nature or level of their current poultry

consumption, they still do not draw a sufficiently concrete link between themselves and

particular slaughter plants that are likely to convert to NPIS.  Neither declaration alleges which

poultry processing plants serve the restaurants that Mr. Painter frequents or the caterers that

AFGE uses at its events.  Instead, plaintiffs rely on general assertions about plaintiffs'

consumption patterns, in the apparent hope that this Court will grant them standing in the

aggregate.  However, as addressed in defendants' opening memorandum, generalized,

unquantified assertions of risk do not, by themselves, establish the kind of "concrete and

particularized" injury Article III requires under the Supreme Court's recent holding in *Clapper v.*

*Amnesty International USA*, --- U.S. ---, 133 S. Ct. 1138, 1147 (2013).  *See FWW*, 2015 WL

514389, at *10-*13.  Accordingly, even as supplemented, plaintiffs' allegations are insufficient

to meet their burden to establish standing.

The procedural postures of *FWW* and the present case do not command a difference in

result.  As an initial matter, although the Court noted in *FWW* that the summary judgment

standard may apply to establish standing in order to justify the issuance of a preliminary

injunction, this Court also found the allegations insufficient to survive dismissal of the case as a

whole.  *FWW*, 2015 WL 514389, at *21.  And, as in *FWW*, plaintiffs here have submitted

affidavits attempting to bolster their allegations.  It is not the amount of evidence that is lacking

in the present case that justifies dismissal; it is what that evidence contains.  *See id.* at *10 ("As a

practical matter, then, '[a]lthough the D.C. Circuit has not closed the door to all increased-risk-of-harm cases, the door remains only slightly ajar.'") (quoting *Ass'n of Am. Physicians & Surgeons v. FDA*, 539 F. Supp. 2d 4, 17 (D.D.C. 2008), *aff'd sub nom. Ass'n of Am. Physicians v. FDA*, 358 F. App'x 179 (D.C. Cir. 2009)).

It is true that, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). However, that presumption does not convert conclusory assertions into concrete injury that would satisfy the requirements of Article III. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *see also FWW*, 2015 WL 514389, at *10 ("[I]t is well-established that a bald risk-of-injury assertion is patently insufficient to demonstrate that a plaintiff has constitutional standing . . . ."). "While the burden of production to establish standing is more relaxed at the pleading stage than at summary judgment, a plaintiff must nonetheless allege general *factual* allegations of injury resulting from the defendant's conduct" that are sufficient to meet Article III requirements. *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011) (quoting *Sierra Club v. EPA*, 292 F.3d 895, 898-99 (D.C. Cir. 2002), emphasis supplied, internal quotation marks omitted). Moreover, when a plaintiff alleges injury from the government's regulation of a third party, as in the present case, "much more is needed." *Defenders of Wildlife*, 504 U.S. at 562; *see also FWW*, 2015 WL 514389, at *7.

Plaintiffs have not met this standard.  Plaintiffs have not alleged that the NPIS will

"substantially" increase the risk of food-borne illness or that they face a "substantial" probability

of illness.  Indeed, the word "substantial" does not appear in the Complaint or in their two new

declarations.  Plaintiffs argue only in their opposition brief that defendants' alleged failure to

adhere to the Poultry Products Inspection Act ("Act") will "create[] a substantial probability of

injury to plaintiffs," Pls' Opp. Mem. 14, implying that the mere fact of a violation of the Act will

bring about the evils the Act was intended to address.  However, that argument improperly

conflates standing with the merits, as the allegation of a statutory violation does not alone suffice

to show a "substantial probability" of injury.  *FWW*, 2015 WL 514389, at *16 (explaining that an

interest in the enforcement of the law does not confer an Article III injury).  If it were otherwise,

no case alleging an Administrative Procedure Act ("APA") violation would ever be subject to

dismissal on standing grounds.  In short, plaintiffs have simply failed to allege the necessary

facts to meet the "increased risk of injury" theory of standing applied in this Circuit.  Dismissal

is therefore appropriate based on the pleadings.  *Allen v. Wright*, 468 U.S. 737, 752 (1984) (at the

pleadings stage, analysis of standing is based on allegations in the complaint), *abrogated on*

*other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, --- U.S. ---, 134 S. Ct.

1377 (2014).  Plaintiffs cannot complain about the deficiencies of their own allegations and

declarations, which are entirely in their own control.  Accordingly, even if discovery were

appropriate in an APA case such as the present, which it is not, discovery would be unnecessary

and irrelevant to the issues at hand.

In asserting standing based on their conclusory and speculative allegations of injury,

plaintiffs rely heavily on the Second Circuit's decision in *Baur v. Veneman*, 352 F.3d 625 (2d

9

Cir. 2003). *See* Pls' Opp. 9-10.  However, that reliance is misguided.  First, in the present case, the threshold issue of whether the agency rule will generate an increased risk of exposure to harm is disputed.  In fact, the agency maintains, and its data show, that the agency rule will *decrease* the risk of exposure to harm.  *See FWW*, 2015 WL 514389, at *12 (finding that the data and information plaintiffs highlighted "tend[] to show . . . that processing poultry pursuant to the NPIS rules will be *beneficial* rather than potentially harmful").  In contrast, in *Baur*, as in many other probabilistic harm cases, this "threshold finding" was "established and uncontroverted." *Compare Baur*, 352 F.3d at 636, 640 (finding that plaintiff had sufficiently asserted "exposure to potentially unsafe food products," that is, beef from downed cattle), *with FWW*, 2015 WL 514389, at *10 ("in this case, unlike others, the question of whether the NPIS rules actually will generate any more adulterated poultry [*i.e.*, whether NPIS-inspected poultry is a 'potentially unsafe food product,' as in *Baur*] must first be asked and answered").  Similarly, in *Public Citizen v. Foreman*, 631 F.2d 969 (D.C. Cir. 1980), where plaintiffs claimed injury from the USDA's refusal to act to eliminate nitrites from bacon, the risk of harm from nitrites was well documented.  *Id.* at 973 ("Test results indicate that nitrites in meat combine with secondary and tertiary amines and amides during cooking to form nitrosamines. These substances have caused cancer in laboratory animals, and researchers believe they might have the same effect on humans.").

Second, as this Court observed in *FWW*, *Baur* is also distinguishable because the plaintiff there did not rely solely on "intuition and speculation about the potential negative effects of the rule change," 2015 WL 514389, at *12 n.10; rather, in *Baur*, "government studies and statements confirm[ed] several of Baur's key allegations" about the potential increased risk of harm.  *Id.*

(quoting 352 F.3d at 637).  And, unlike in *Baur*, when plaintiffs here speculate about potential injuries from the NPIS, they have a "narrow focus" on isolated health issues, such as speculation about the increased risk of "avian leukosis complex."  Pls' Opp. at 13; *see FWW*, 2015 WL 514389, at *11.  That narrow focus ignores the "larger and far more significant conclusion to be drawn from the agency's interpretation of the data:  that the agency anticipates an *overall reduction* in foodborne illnesses under the new poultry inspection system." *Id.* (emphasis in original). [3]

Accordingly, for these reasons, neither Mr. Painter, nor AFGE as a representative of its members, has alleged a sufficient injury-in-fact to confer standing.  The same holds true for AFGE itself, which cannot base standing on the additional layer of speculation that is required to assume that a third-party would sue AFGE after becoming ill as a result of poultry served at an AFGE event.  Defs' Dismiss Mem. at 24-27.  Accordingly, the Complaint should be dismissed.

## II.    PLAINTIFFS' SUPPLEMENTAL DECLARATIONS DO NOT CURE THEIR FAILURE TO ESTABLISH THAT THE INTERESTS AT STAKE IN THIS LAWSUIT ARE SUFFICIENTLY GERMANE TO AFGE'S PURPOSES

AFGE has also not satisfied the requirement for representational standing that its interests be germane to AFGE's organizational objectives as the union representing federal employees.  Defs' Dismiss Mem. 27-30.  AFGE claims, *inter alia*, that its object is "to promote the general welfare of government employees," that it "defends a wide-range of constitutional, statutory, and contractual rights of the employees it represents," and that it offers to members "an extensive

---

[3] In addition, all of the cases relied upon by plaintiffs pre-date *Clapper*, further weakening their applicability here.  Moreover, another pre-*Clapper* case cited by plaintiffs, *Kenney v. Glickman*, 96 F.3d 1118 (8th Cir. 1996), is of limited utility.  The Court of Appeals' decision in *Kenney* does not reveal the basis for the consumer plaintiffs' claim of standing nor the reasoning relied upon by the district court in concluding that they did have standing.

array of benefits from health and dental insurance, legal services, and mortgage assistance." Cox

Decl. ¶¶ 4-6.  However, the mere fact that AFGE is supportive of its members, and that it

provides health benefits to its members, does not mean that food safety issues are germane to

AFGE's organizational purpose.  Otherwise, any organization that cares about the well-being of

its members, which is presumably all of them, would have standing to challenge food safety

regulations.  Such a conclusion would entirely defeat the germaneness requirement.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in the Memorandum in Support of

Defendants' Motion to Dismiss, the Complaint should be dismissed.

Dated:  April 9, 2015

Respectfully submitted,

BENJAMIN C. MIZER
Acting Assistant Attorney General
Civil Division

ERIC R. WOMACK
Assistant Branch Director

/s/ Carol Federighi
CAROL FEDERIGHI
Senior Trial Counsel
OF COUNSEL:                          United States Department of Justice
                                     Civil Division, Federal Programs Branch
SHEILA H. NOVAK                      P.O. Box 883
SUSAN C. GOLABEK                     Washington, DC 20044
TRACY M. MCGOWAN                     Phone: (202) 514-1903
U.S. Department of Agriculture       Email: carol.federighi@usdoj.gov

*Counsel for Defendants*