IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 14-cv-1753 (KBJ) |
| THOMAS J. VILSACK, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Charles Stanley Painter is a federal poultry inspector who has joined with his labor union, the American Federation of Government Employees AFL-CIO ("AFGE"), to challenge the federal government's recent adoption of a new National Poultry Inspection System (the "NPIS"). *See* Modernization of Poultry Slaughter Inspection, 79 Fed. Reg. 49,566 (Aug. 21, 2014) (to be codified at 9 C.F.R. pts. 381 and 500). Plaintiffs have filed the instant complaint against the Secretary of Agriculture, the Administrator of the Food Safety and Inspection Service ("FSIS"), and the United States Department of Agriculture ("USDA") because, in Plaintiffs' view, the NPIS makes substantial and potentially detrimental changes to the manner in which federal inspectors like Painter and other AFGE members inspect poultry at slaughter establishments. (*See* Compl., ECF No. 1, ¶¶ 19–20, 23–25, 60.) Specifically, although federal poultry inspectors will continue to "conduct post-mortem inspections of poultry

carcasses and perform other official functions . . . for the purpose of preventing the sale of adulterated poultry and poultry products" (*id.* ¶ 12), there will be fewer federal inspectors posted on the slaughter line, faster line speeds, and more substantial involvement by employees of the poultry establishments in the federal inspection process under the NPIS, *see* 79 Fed. Reg. 49,567.  Plaintiffs assert that the NPIS thus effectively "prevents the inspection by inspectors" of the viscera and carcass of each bird processed (Compl. ¶¶ 84, 90), and it also eliminates federal inspector supervision of "the reprocessing of all adulterated carcasses" (*id.* ¶¶ 91–92). Plaintiffs maintain that, as a result, "the Rule increases the risk that AFGE's employees, members, and prospective members will become ill after consuming poultry or poultry products" (*id.* ¶ 17), and they have asked this Court to "[e]njoin[] the defendants from implementing the Rule insofar as it permits anything less than post-mortem inspections of the carcass and all parts thereof of each bird slaughtered" and stop Defendants "from permitting anyone other than a government inspector from exercising the statutory authority to conduct post-mortem poultry inspections" (*id.* at 19).[1]

This Court recently addressed a substantially similar challenge to the NPIS in the context of a case in which a consumer advocacy organization and several of its individual members sought a preliminary injunction to prevent implementation of the NPIS.  *See Food & Water Watch, Inc. v. Vilsack* ("*FWW*"), No. 14-cv-1547, 2015 WL 514389, at *1 (D.D.C. Feb. 9, 2015).  The plaintiffs in *FWW* argued that "the revised processing procedures are inconsistent with [federal law] and will ultimately result in the production of unsafe poultry products[,]" and the defendants moved to dismiss the

---

[1] Citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing. *Id.* This Court sustained the defendants' contention, holding that the plaintiffs had failed to prove that they had suffered (or imminently would suffer) "an injury-in-fact that is traceable to the actions of the Defendants and that relief from this Court can address[,]" *id.* at *2, as was necessary for the Court to assure itself that it had jurisdiction to proceed on the request for a preliminary injunction.

Before this Court at present is Defendants' motion to dismiss the complaint in the instant case—a motion that makes substantially the same standing arguments as those the Court addressed in *FWW*. However, this Court finds that the legal analysis in this case differs from *FWW* in one significant respect—the plaintiffs here have not sought a preliminary injunction, and thus the injury allegations in the instant complaint must be accepted as true under the standards that apply to ordinary motions to dismiss, as explained below. That said, it is well established that because the regulation at issue here is a rule that pertains to third-party conduct and does not govern Plaintiffs directly, Plaintiffs must provide proof of the causation and redressability aspects of the standing requirement even at this early stage of the litigation. This Court finds that Plaintiffs have not done so, for the reasons explained below; therefore, Defendants' motion to dismiss will be **GRANTED**. A separate order consistent with this opinion will follow.

I.  **BACKGROUND**

This Court's opinion in *FWW* describes at length the origin and contours of the NPIS, *see FWW*, 2015 WL 514389, at *3–5, and that description need not be repeated here. In short, under the traditional inspection system, federal inspectors conducted "organoleptic" inspections of each poultry carcass and its viscera, *see Am. Fed'n of*

3

*Gov't Emps., AFL-CIO v. Glickman*, 215 F.3d. 7, 9 (D.C. Cir. 2000), and their duties included "sorting acceptable product from unacceptable product, finding defects, identifying corrective actions, and solving production control problems[,]" 77 Fed. Reg. 4410 (Jan. 27, 2012) (to be codified at 9 C.F.R. pts. 381 and 500). With respect to these duties, slaughter establishment employees merely served as "helper[s] to take such actions as directed by the online post-mortem inspector after the inspector ha[d] conducted the initial sorting activities[,]" *FWW*, 2015 WL 514389, at *3 (internal quotation marks and citation omitted).

The NPIS changes the traditional poultry inspection process, largely because it permits the employees of slaughter establishments to conduct the preliminary screening of poultry carcasses, and it allows them to remove adulterated carcasses from the slaughter line without first presenting them to a federal inspector. *See* 79 Fed. Reg. 49,567. In addition, those birds that *are* presented to federal inspectors are met with a visual-only inspection rather than an organoleptic inspection. *See id.* Consequently, the NPIS requires fewer federal inspectors to be stationed along the slaughter lines than was the case under the traditional system, and it permits a faster rate of inspection by federal inspectors. *See id.*[2]

Plaintiffs dislike the NPIS and seek to stop its implementation. (*See* Compl. ¶ 8.) On the merits, Plaintiffs argue that the Court should invalidate the NPIS because

---

[2] As this Court explained in *FWW*, the USDA maintains that its adoption of the NPIS was part of an intentional "shift of federal inspection resources away from *post*-processing organoleptic review of poultry carcasses—which . . . made sense at a time when visually detectable animal diseases were more prevalent and considered to be more of a concern than they are today—and toward stricter *pre*-processing controls, which . . . are more important than ever in detecting the kind of microbial contamination that causes food borne human illness today." *FWW*, 2015 WL 514389, at *3 (internal quotation marks and citation omitted). For this reason, the agency has taken the position that the NPIS improves food safety overall. *See id.* (explaining the agency's view that "the restructured inspection roles means that the FSIS can assign fewer inspectors to online inspection, freeing up Agency resources

4

the rule is inconsistent with the Poultry Products Inspection Act ("PPIA") (*see id.* ¶¶ 89–93), and, as a threshold matter, Plaintiffs argue that they have Article III standing to challenge the NPIS because the NPIS will "increase the risk that adulterated poultry products will be sold to and consumed by the public[,]" including AFGE members like Painter.  (*Id.* ¶ 5; *see also id.* ¶¶ 21–22 (claiming that, as a consumer of poultry products, "Painter's health and welfare are likely to be adversely affected" due to the increased risk caused by the Rule); Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 14, at 17 ("Plaintiffs are consumers of poultry and are injured by FSIS's abdication of its statutory responsibility to inspect the carcass of each bird processed because FSIS's adoption of the [R]ule creates a substantial probability that plaintiffs will be harmed by consuming unwholesome and adulterated poultry.").)[3] Defendants' motion to dismiss for lack of subject matter jurisdiction seizes on the fact that, like the plaintiffs in *FWW*, Painter and AFGE have not offered any concrete evidence to support their contention that the NPIS will increase the risk that Painter and other AFGE members will consume adulterated poultry products, maintaining that *FWW* establishes that Plaintiffs do not have Article III standing because their "amorphous, unsubstantiated assertions about increased risk are . . . too speculative to establish the necessary concrete, particularized, and imminent 'injury-in-fact[.]'"  (Defs.' Mem. in

---

to conduct offline inspection activities that are more important for food safety, such as verifying compliance with sanitation and other requirements, or conducting Food Safety Assessments[.]") (internal quotation marks, citation, and alterations omitted)).

[3] In this same vein, Plaintiffs also assert that AFGE employees and members might become ill after consuming adulterated chicken "at an AFGE-sponsored event[,]" and as a result, AFGE is likely to face an "increased risk of litigation." (Compl. ¶ 18). Because this alleged injury-in-fact necessarily relies on people becoming ill from consuming adulterated poultry, it is an extension of the same type of injury alleged elsewhere in the complaint, and the Court does not distinguish between these allegations for the purpose of its standing analysis.

5

Supp. of Defs.' Mot. to Dismiss, ECF No. 12-1, at 11; *see also* Defs.' Reply in Supp. of Defs.' Mot. to Dismiss ("Defs.' Reply"), ECF No. 16, at 2.)

For the reasons that follow, this Court concludes that Defendants' legal reasoning misses the mark in this context, but that Plaintiffs' complaint must nevertheless be dismissed for lack of Article III standing, because Plaintiffs have failed to prove causation and redressability, as is required in this case.

## II.    ANALYSIS

### A.    Applicable Standing Standards

The requirement that a plaintiff have standing to sue is rooted in the Constitution's "Cases" and "Controversies" limitation, U.S. Const. art. III, § 2, cl. 1, which restricts federal courts to answering questions that are presented "in an adversary context and in a form historically viewed as capable of resolution through the judicial process" in order "to assure that the federal courts will not intrude into areas committed to the other branches of government." *FWW*, 2015 WL 514389 at *6 (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)).  The standing doctrine helps courts to identify "the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Accordingly, a lack of standing is a defect that relates directly to a federal court's subject matter jurisdiction, and it must be addressed as a preliminary matter before progressing to an analysis of the merits of a plaintiff's complaint.  *See FWW*, 2015 WL 514389, at *6.

It is well established that Article III standing has three basic elements: injury-in-fact, causation, and redressability.  *See Defenders of Wildlife*, 504 U.S. at 560; *see also Fed. Forest Res. Coal. v. Vilsack,* No. 12-cv-1333, 2015 WL 1906022, at *9 (D.D.C.

Apr. 28, 2015) ("To establish the irreducible constitutional minimum of standing[,] a plaintiff must allege (1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.") (internal quotation marks and citation omitted)). And because standing is a jurisdictional issue, the burden is on the plaintiff to establish constitutional standing to sue. *See Defenders of Wildlife*, 504 U.S. at 561.

Significantly for present purposes, "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.  Thus, at the pleading stage, "'general factual allegations of injury resulting from the defendant's conduct may suffice,' and the court 'presum[es] that general allegations embrace the specific facts that are necessary to support the claim.'" *Renal Physicians Ass'n v. U.S. Dep't of Health and Human Servs.*, 489 F.3d 1267, 1273 (D.C. Cir. 2007) (quoting *Sierra Club v. Envtl Protection Agency*, 292 F.2d 895, 898 (D.C. Cir. 2002)) (*see also Defenders of Wildlife*, 504 U.S. at 561).  By contrast, at the summary judgment stage, "[a] plaintiff's 'burden of proof is to show a substantial probability that it has been [or will be] injured, that the defendant caused [the] injury, and that the court could redress that injury.'" *FWW*, 2015 WL 514389, at *7 (quoting *Ams. for Safe Access v. Drug Enforcement Admin.*, 706 F.3d 438, 443 (D.C. Cir. 2013) (alteration in original).

### B.     Plaintiffs Need Not Prove That They Have Suffered, Or Will Imminently Suffer, The Alleged Injury-In-Fact At This Stage Of The Instant Litigation

Defendants insist that "[i]n light of *FWW*, and its discussion of the law of standing in this Circuit as it relates to speculative allegations about generalized harms from the operation of the NPIS, the present case must be dismissed." (Defs.' Reply at 2.)  Defendants' contention is understandable, given that the instant complaint challenges the same government action (the NPIS) and makes substantially the same allegations of injury.  However, Defendants have seemingly overlooked one significant distinction between the instant case and the circumstances in *FWW*: in *FWW*, this Court stressed that the plaintiffs needed to meet the evidentiary burden required to establish standing at the summary judgment stage because the plaintiffs sought a preliminary injunction.  *See FWW*, 2015 WL 514389, at *7 ("[W]here a plaintiff seeks a preliminary injunction, the plaintiff's burden 'will normally be no less than that required on a motion for summary judgment.'") (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 907 n.8 (1990)).  And the Court ultimately found that the plaintiffs in *FWW* lacked standing in light of this evidentiary burden—*i.e.*, because the plaintiffs did not sufficiently support the alleged injury-in-fact.  *See FWW*, 2015 WL 514389, at *9.[4]

---

[4] The *FWW* plaintiffs had asserted that they were afraid that slaughterhouses operating under the NPIS would produce adulterated poultry, which might then enter the stream of commerce, and might ultimately be purchased and consumed by plaintiffs and sicken them.  *See FWW*, 2015 WL 514389 at *5.  In support of this assertion, the plaintiffs offered various comments submitted during the rulemaking process, as well as affidavits from current and former inspectors, stating that there would be more adulterated chickens under NPIS just "as a matter of common sense[,]" *id.* at *11, and this Court found that the plaintiffs had "failed to show that there is a clear and close nexus between the agency's action, the feared result, and these . . . plaintiffs[.]"  *Id.* at *12.  In other words, the Court concluded that the plaintiffs' allegation of injury was unsupported, and thus the plaintiffs had failed to demonstrate that there was a substantial probability that they would be injured, as the preliminary injunction burden required.  *Id.*

8

Painter and AFGE have not requested a preliminary injunction, and thus, the higher evidentiary burden with respect to establishing an injury-in-fact that this Court required of the plaintiffs in *FWW* does not apply.  Instead, the injury allegations in the instant complaint must be reviewed subject only to the plausibility pleading requirement that pertains to the motion to dismiss stage. *See Defenders of Wildlife*, 504 U.S. at 561; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This means that, in analyzing whether Plaintiffs have alleged an injury-in-fact that is sufficient to support Article III standing, this Court "must accept the factual allegations in the complaint as true[,]" *Holistic Candlers and Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 943 (D.C. Cir. 2012) (quoting *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003) (internal quotation marks omitted)), and must consider only the plausibility of Plaintiffs' assertion that Painter and other AFGE members will become ill from consuming adulterated poultry products, *Iqbal*, 556 U.S. at 678.  This Court finds that Plaintiffs' illness contention is plausible (albeit highly speculative), and therefore, the Court will not require Plaintiffs to substantiate their assertions of injury in order to demonstrate standing at this time.

    **C.**    **Because The Actions Of A Regulated Third Party Are At Issue, Plaintiffs Must Prove Causation And Redressibility In Order To Establish Standing, And They Have Failed To Do So**

Despite the fact that Plaintiffs' allegations regarding their purported injury-in-fact as a result of the challenged rule must be accepted as true for the purpose of Defendants' motion to dismiss, this Court finds that Plaintiffs nevertheless bear the burden of proving causation and redressability in order to establish that they have standing to bring this case. *See Defenders of Wildlife*, 504 U.S. at 560–61.  This is because Plaintiffs contend that the NPIS Rule—which does not apply directly to

Plaintiffs but regulates poultry slaughter establishments and other stakeholders in the poultry inspection system—will lead to more adulterated poultry and will ultimately harm Plaintiffs as consumers.  No less an authority than the Supreme Court has "made clear[ that] when a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed" to prove that the plaintiff has standing to sue.  *Arpaio v. Obama*, 27 F. Supp. 3d 185, 204 (D.D.C. 2014) (citing *Defenders of Wildlife*, 504 U.S. at 562 (emphasis in original).  In such a circumstance, the plaintiff is required to *prove* the alleged link between the challenged government conduct and the plaintiff's injury because, where the government conduct is directed at a third party, the necessary "causation and redressability ordinarily hinge on the response of th[at] regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well[,]" *Defenders of Wildlife*, 504 U.S. at 562 (emphasis added)—and thus, it is far from certain that the alleged injury will necessarily follow.

Put another way, case law makes clear that when "[t]he existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' the plaintiff must 'adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.'" *FWW*, 2015 WL 514389, at *6 (quoting *Defenders of Wildlife*, 504 U.S. at 562).  Moreover and significantly, the burden of proving causation and redressability in these third-party regulation cases applies *both* at the summary judgment stage of the litigation *and* at the motion to

10

dismiss stage. *See, e.g.*, *Renal Physicians*, 489 F.3d at 1267 (dismissing case at the motion to dismiss stage based on plaintiff's failure to prove causation and redressability where plaintiff's injury arose from the government's regulation of a third party); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 939 (D.C. Cir. 2004) (same); *Food and Water Watch v. Envtl Protection Agency*, 5 F. Supp. 3d 72, 73 (D.D.C. 2013) (same).

This all means that the causation and redressability aspects of the Article III standing inquiry are "substantially more difficult to establish" if a third party who is not before the court is the direct cause of the plaintiff's alleged injury. *Defenders of Wildlife*, 504 U.S. at 562 (internal quotation marks and citation omitted). Indeed, this Court is aware of only two categories of cases in which courts have held that standing exists to challenge government action when the government action regulates the conduct of a third party and the third party's conduct is the direct cause of the plaintiff's alleged injury. The first of these kinds of cases are those in which "the challenged government action authorize[s] conduct that would otherwise [be] illegal." *Renal Physicians*, 489 F.3d at 1275. So, for example, when the challenged rule carves out an exception to otherwise outlawed behavior (*i.e.*, when the rule that the plaintiff seeks to attack authorizes the third party to do something that would have been impermissible otherwise) and the plaintiff is allegedly harmed as a result, courts have concluded that the necessary causal link between repealing the challenged rule and redressing the injury is established. *See, e.g.*, *Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 445 (D.C. Cir. 1998) (holding that plaintiff proved causation and redressability where the challenged regulation permitted primates to be kept in

11

inhumane conditions, which was prohibited by statute, and plaintiff was injured by seeing primates in inhumane conditions); *see also Nat'l Wrestling Coaches Ass'n*, 366 F.3d at 940 (explaining that, in this category of cases, further proof of causation and redressability are not necessary because "the intervening choices of third parties are not truly independent of government policy").

Plaintiffs here suggest that the instant case fits into this "otherwise illegal" category of cases because, "[a]bsent the [NPIS] Rule, it would be unlawful for poultry establishments to distribute poultry that was not subject to carcass-by-carcass federal inspection[.]" (Pls.' Opp'n at 23.)  But this contention is a conclusion of law (so this Court need not accept it, *see Arpaio v. Obama*, 27 F. Supp. 3d at 199), and it is far from clear that the NPIS rule actually authorizes inspection-related conduct that would otherwise be impermissible under the PPIA—indeed, *that* is the contested issue that Plaintiffs asked this Court to resolve when they filed the instant complaint.  Moreover, and in any event, even if the allegedly lax nature of the NPIS inspection regime permits slaughter establishments and federal poultry inspectors to violate the PPIA, the fact that the rule permits such a violation is not sufficient to establish that the NPIS rule will cause harm to Plaintiffs because, according to Plaintiffs' allegations, the NPIS rule authorizes *under-inspection* of poultry products, when eating *adulterated* poultry is the act that Plaintiffs allege will cause their injury.  In other words, unlike other third-party regulation cases in the "otherwise illegal" category, the injury here does not result directly from what the challenged regulation permits, but from what plaintiffs assert will be an *indirect* consequence of what the NPIS rule allows—specifically, that the NPIS's easing of the "carcass-by-carcass" poultry inspection requirement will lead to

under-inspected poultry, which, in turn, will result in more adulterated poultry entering the stream of commerce, and this adulterated poultry is likely to be consumed by Plaintiffs, to their physical detriment. (Compl. ¶17.) Plaintiffs have not cited any case in this category in which a court has found that standing exists under similarly attenuated circumstances. Consequently, this Court concludes that, where a plaintiff's alleged injury is not caused directly by the purportedly otherwise illegal act that the rule has authorized but, instead, is the indirect consequence of the government's authorization, further evidence is needed to establish the causation element of standing. *Cf. Allen v. Wright*, 468 U.S. 737, 754 (1984) ("[The Supreme Court] has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.").

The second category of third-party regulation cases in which standing is said to exist is "where the record present[s] substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress." *Nat'l Wrestling Coaches Ass'n.*, 366 F.3d at 940. A plaintiff has standing in this second category of cases only if he or she can show "formidable evidence" making "causation so clear that redressability inexorably follows." *Id.* at 942. And this Court has little doubt that Plaintiffs have failed to mount the "formidable evidence" hurdle here. Painter and AFGE have offered two affidavits—one from Plaintiff Painter and the other from AFGE president David Cox—and in these testaments, the declarants state only that Painter and Cox consume poultry, and that, in their experience, "federal inspection of the carcass, including viscera, of

13

each bird processed is vital to protecting the health and welfare of both [themselves] and poultry consumers." (Decl. of Charles Stanley Painter, ECF No. 14-2, ¶ 11); the affidavits do not speak to the likelihood that the NPIS will increase the risk that adulterated poultry will be produced.  For example, Plaintiffs not have provided evidence that the increase in the maximum slaughter line speed will make it too difficult for federal inspectors to conduct an adequate visual inspection of poultry destined for consumption by Plaintiffs, such that more adulterated poultry will enter the stream of commerce.  Nor do Plaintiffs' affidavits show that poultry establishment employees are worse than federal inspectors at determining when poultry is adulterated, or that the reduction in the number of federal inspectors will increase the likelihood that adulterated poultry will leave the slaughterhouse en route to Plaintiffs' neighborhood fast food restaurant.

Indeed, far from establishing a close causal connection between the NPIS and the entry of adulterated poultry products into the marketplace, Plaintiffs have presented only wholly unsubstantiated speculation, such as the bald assertion that the NPIS "threatens the health and safety of [AFGE] members . . . because it prevents government inspectors from inspecting the carcass of each bird processed by private poultry establishments." (Decl. of David J. Cox, Sr., ECF No. 14-1, ¶ 9; *see also* Compl. ¶ 17.)  Not only do such contentions seemingly conflict with the actual experience of the FSIS during the pilot project that the agency conducted prior to its promulgation of the NPIS rule, *see FWW*, 2015 WL 514389, at *4, Plaintiffs' unsubstantiated claims also clearly fall far short of the requirement that, when the plaintiff seeks to challenge a rule that governs third-party conduct, the evidence of

causation and redressability must rise above conclusory assertions and enter the realm of the formidable.  *See, e.g.*, *Tozzi v. Dep't of Health and Human Servs.*, 271 F.3d 301, 311 (D.C. Cir. 2001) (holding that the plaintiffs had shown that the agency's decision to classify an ingredient in PVC plastic as a carcinogen substantially caused PVC company's lost profits where the company offered affidavits of former PVC consumers that stated they had eliminated their use of PVC in response to the Department's classification); *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (holding that the causation requirement was met with respect to the classification of a film as political propaganda, where the plaintiff submitted affidavits detailing specific instances in which potential customers declined to show the films because of their classification as political propaganda).

In short, Plaintiffs have provided *no* concrete evidence—much less substantial evidence—that the NPIS rule will actually cause more adulterated poultry to be released into the marketplace than would otherwise be the case.  Consequently, Plaintiffs have failed to meet their burden of proof with respect to the causation and redressability elements of the Article III standing requirement, and this Court lacks jurisdiction to proceed to the merits of Plaintiffs' complaint.

**III.    CONCLUSION**

Although Defendants argue fervently that this Court should rely on *FWW* to dismiss the instant action for lack of subject matter jurisdiction, Painter and AFGE have alleged facts that, if accepted as true, would likely satisfy the injury-in-fact requirement for Article III standing.  (*See, e.g.*, Compl. ¶ 17 ("the [NPIS] Rule increases the risk that AFGE's employees, members, and prospective members will become ill after

15

consuming poultry or poultry products.").)  However, Plaintiffs have not offered substantial evidence demonstrating the causation and redressability components of Article III standing with respect to their theory of injury, and it is clear beyond cavil that they must do so because they are seeking to challenge a rule that regulates third-party conduct.  Having failed to demonstrate any causal connection whatsoever between the new NPIS rule and an increased likelihood that poultry slaughter establishments will produce adulterated poultry that could ultimately sicken Plaintiffs, Plaintiffs here do not have Article III standing to challenge the rule in federal court, and this Court lacks subject matter jurisdiction over the instant action.  Accordingly, as set forth in the accompanying order, Defendants' motion to dismiss is **GRANTED**.[5]

DATE:  July 31, 2015                     *Ketanji Brown Jackson*
                                         KETANJI BROWN JACKSON
                                         United States District Judge

---

[5] This Court need not consider whether some *other* theory of injury exists that would have provided Plaintiffs with a more straightforward opportunity to establish causation and redressability, and thus standing to sue.  *See, e.g., FWW*, 2015 WL 514389 at *13 (noting that "[c]ertainly he who is likely to be financially injured by an agency's actions" has suffered an injury-in-fact) (internal quotations and citation omitted); *see also Am. Fed'n of Gov't Emps. v. Cohen*, 171 F.3d 460, 475 (7th Cir. 1999) (holding that the maintenance of a skilled arsenal workforce necessarily entails the preservation of federal employment opportunities; therefore, those who are at risk of losing federal employment had suffered an injury-in-fact for the purpose of Article III and also had prudential standing because they were arguably within the "zone of interests" of the act).  Plaintiffs bear the burden of proving that they have standing to sue, and this Court's opinion is confined to the standing arguments that Plaintiffs have made.  *See Defenders of Wildlife*, 504 U.S. at 561.